IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Michelle Moss Etlin,<br>Petitioner, | )<br>)<br>) | |
| v. | )<br>) | 1:09cv886 (JCC/TCB) |
| Unknown,<br>Respondent. | )<br>)<br>) | |

## MEMORANDUM OPINION

Michelle Moss Etlin, a Maryland resident acting pro se, has filed a Petition for Writ of Error Coram Nobis ... and/or Alternative Pleas to the Court's Jurisdiction, seeking various forms of relief from the dismissal of her pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in Eastern District of Virginia case number 1: 89cv0527-A, and from the obligations imposed upon her in a contempt judgment entered by a Virginia circuit court in 1987. Specifically, Etlin argues that the relief she seeks is available through writ of error coram nobis, the supplemental jurisdiction doctrine codified at 28 U.S.C. § 1367, or pursuant to Fed. R. Civ. P. 60 (b)(4). For the reasons that follow, no jurisdiction presently exists to alter this Court's judgment in case number 1: 89cv0527-A or to grant petitioner the relief she seeks from the state contempt judgment, and this petition must be dismissed for failure to state a claim.

### I. Background

On April 7, 1989, Etlin filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in Etlin v. Huggins, case number 1:89cv0527-A, alleging that her incarceration pursuant to a contempt judgment entered by the Circuit Court for the County of Fairfax, Virginia on March 25, 1987 was unlawful. Review of the court file of that earlier federal case[1] shows that the petition,

---

[1] It is well established that a court may take judicial notice of its own records and files, whether it is requested to do so or not. Fed. R. Evid. 201. Judicial notice is particularly applicable

which was accompanied by a motion to recuse the Honorable Albert V. Bryan, Jr., had its genesis in a bitterly-fought custody dispute between Etlin and her former husband, Vladimir. In brief, during the course of the state custody proceedings, Etlin removed her son from the United States in September, 1982, thereby denying her husband the visitation rights which had been awarded to him. When Etlin failed to appear in Fairfax County Circuit Court to show cause why she should not be held in contempt for such action, a bench warrant for her arrest was issued by Judge F. Bruce Bach. Etlin subsequently was held in contempt, and custody of the child was awarded to Vladimir. The original bench warrant was replaced in 1985 by an amended warrant which alleged criminal contempt. Etlin v. Huggins, Mem. Op. Oct. 1, 1990 at 3 - 5.

In February, 1987, Vladimir seized his son while the boy was on his way to school in Oregon. Etlin turned herself in to the Sheriff of Fairfax County on February 18, 1987, her bond was revoked, and she was held for two months without bail. On March 25, 1987, Etlin was sentenced for misdemeanor contempt of court to serve twelve months in jail, with ten months suspended, followed by three years probation, and custody of the child again was awarded to Vladimir.[2] Etlin appealed

---

to a court's own records of prior litigation which is closely related to the matter under consideration. Chandler v. O'Bryan, 311 F. Supp. 1121 (D.C. Okl.), rev'd on other grounds, 445 F.2d 1045 (10th Cir.), cert. denied, 405 U.S. 964 (1972); accord, Lolavar v. De Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of the docket sheet of a court of record); Fletcher v. Bryan, 175 F.2d 716, 717 (4th Cir. 1949) (where justice requires, "court should not hesitate to look to its own records to see what they disclose...").

[2] Judge Bach issued his order after presiding over three hearings on the issues involved in the custody and contempt determinations. In his order, Judge Bach found that Etlin had put her own selfish interests ahead of those of her child, that her conduct amounted to cruelty and child abuse, and that it had been "disastrous for the child to live the life of fraud all over the world." Pet., Ex. A at 2 - 3. The court found that Etlin was guilty of willful contempt based upon her actions in falsifying records and fleeing with the child, with the intent to deprive the father of his right of visitation and the child of a natural association with his father, and imposed the sentence described above. Id. at 6 -7. The court denied Etlin's motion for change of custody, and held that sole custody of the child would remain with Vladimir. Id. at 4. The court also ordered Etlin to surrender her own passport and that of her son, to pay child support to Vladimir in the amount of $250 per month, and to reimburse Vladimir for $8,800 in attorney's fees he had incurred in the proceedings. Id. at 7 - 8.

2

to the Court of Appeals of Virginia, which refused to hear the case, and her subsequent petitions for review by the Supreme Court of Virginia and the United States Supreme Court likewise proved unsuccessful. Etlin v. Huggins, Mem. Op. Oct. 1, 1990 at 5 - 6.

At that juncture, Etlin turned to the federal forum and filed her § 2254 petition in case number 1:89cv0527-A. The matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636. On August 28, 1990, the magistrate filed a Report and Recommendation advising that the case should be dismissed as moot, since Etlin's period of probation had expired in March, 1990, so she was no longer "in custody" for purposes of habeas corpus review. Etlin filed timely objections to the report, and this Court heard oral argument on the objections on September 14, 1990 and conducted the required de novo review of the case. Pursuant to that review, this Court issued a Memorandum Opinion on October 1, 1990, dismissing Etlin's petition as moot. In addition, an attempt by Etlin to make Judge Bach a party to the action was rejected.

Etlin lodged an appeal of this Court's Order dismissing her § 2254 application with the Fourth Circuit Court of Appeals, as case number 90-6921. In a slip opinion issued on May 14, 1991, the appellate court remanded the matter for consideration of whether the award of attorney's fees to Vladimir or the taking of Etlin's passport were incident to, and hence collateral consequences of, her contempt conviction, see n. 3, supra, in which case her habeas corpus application would not be moot. Etlin v. Huggins, 932 F.2d 963 (4th Cir. May 14, 1991) (unpublished; available at 1991 WL 76043). On October 31, 1991, this Court issued a Memorandum Opinion finding that neither the order that Etlin surrender her passport nor the award of attorney's fees to Vladimir was incident to her contempt conviction, and that Etlin would suffer no other collateral consequences as the result of the conviction. Accordingly, this Court concluded pursuant to Carafas v. LaVallee, 391 U.S. 234 (1968) that Etlin's petition for habeas corpus relief from the conviction was moot. The Fourth

3

Circuit subsequently affirmed that determination in a unpublished per curiam opinion. Etlin v. Huggins, R. No. 91-7363 (4th Cir. Dec. 23, 1992).

Etlin initiated the instant action on August 7, 2009, by filing a Verified Petition for Writ of Error Coram Nobis, with numerous exhibits and a supporting memorandum of law. In the petition, Etlin states that from April, 1989 through October, 1991, while she was litigating case number 1:89cv0527-A, authorities in Fairfax County made "no serious attempt" to enforce the custody order against her. Pet. at 3. Because intervening orders of the Juvenile Court in Fairfax County terminated all of Etlin's visitation and contact with her son without ordering her to pay child support, she concluded that the order of March 25, 1987 was no longer "alive or enforceable," and she "ceased all attempts to deal with it." Pet. at 4.[3] However, after sixteen years passed, Etlin's bank account was seized and a "negative forced post deposit" was placed against it for $22,000 in child support arrearages by Virginia authorities. Pet. at 4. At a telephone hearing on September 25, 2007, Etlin allegedly first learned that it was the March 25, 1987 contempt order which was "being used against" her, and since that time her bank account and $250 tax stimulus payment allegedly have been seized, a portion of her Social Security disability payments are being garnished monthly, renewal of her passport has been blocked, and she has been threatened with incarceration and the loss of her driver's license and "other rights." Pet. at 4.

Based upon these circumstances, Etlin asks the court to revisit the dismissal of her § 2254 petition in case number 1:89cv0527-A, and to grant her relief from the underlying 1987 Virginia contempt judgment. Etlin argues that jurisdiction to accomplish what she seeks exists through a

---

[3] Etlin also infers that she was misled into believing that the March 25, 1987 order was no longer enforceable by the Fourth Circuit's alleged declaration that the order was moot: "By the time of the second Fourth Circuit decision declaring it moot (February 1993), I believed it actually was moot." Pet. at 4. In this regard Etlin is simply mistaken, because what the Fourth Circuit determined to be moot was not the state court's order, but rather was Etlin's § 2254 application for relief from that order.

4

coram nobis proceeding, pursuant to the supplemental jurisdiction doctrine codified at 28 U.S.C. § 1367, or by granting relief pursuant to Fed. R. Civ. P. 60 (b)(4). Pet. at 17 - 19. Etlin also has filed a motion to disqualify this Court from presiding over this matter, and a "provisional" motion to allow her to withdraw the petition prior to its adjudication if disqualification is denied. For the reasons that follow, both the motion to disqualify and the provisional motion to withdraw petition will be denied, and the petition must be dismissed for failure to state a claim for which relief can be granted.

## II. Motion to Disqualify

In her Motion to Disqualify, Etlin argues that this Court should be recused from presiding in this case because the instant petition challenges actions that were taken and decisions that were made in petitioner's 1989 habeas corpus proceeding. (Docket # 3) In her Affidavit of Prejudice which is appended to the motion, petitioner analyzes a paragraph from the Memorandum Opinion issued by the Court on October 31, 1991 in case number 1:89cv0527-A, and concludes that the Court erred as a matter of law in several respects in the disposition of that earlier matter.

Under the United States Code, a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Disqualification is required if a reasonable factual basis exists for doubting a judge's impartiality. People Helpers Foundation, Inc. v. City of Richmond, 12 F.3d 1321, 1325 (4th Cir. 1993); Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir. 1978). The relevant inquiry is whether a reasonable person would have a factual basis to doubt the judge's impartiality, and not whether the judge in fact is impartial. In re Beard, 811 F.2d 818, 827 (4th Cir. 1987). To be disqualifying, the judge's alleged bias must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case; in other words, the prejudice must be personal rather

than judicial. United States v. Grinnell Corp., 384 U.S. 563, 583 (1996); Shaw v. Martin, 733 F.2d 304, 308 (4th Cir.), cert. denied, 469 U.S. 873 (1984). "The mere fact that a judge has entered adverse rulings on motions or presided over other parallel proceedings is not enough in and of itself to warrant recusal." Hause v. Witkowski, 98 F.3d 1334 (4th Cir. 1996) (table), 1996 WL 593798 (4th Cir. Oct. 16, 1996), citing United States v. Parker, 742 F.2d 127, 128-29 (4th Cir.), cert. denied, 469 U.S. 1076 (1984). Thus, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion ... [T]hey ... can only in the rarest circumstances evidence the degree of favoritism or antagonism [to make fair judgment impossible] ... when no extrajudicial source is involved." Liteky v. United States, 510 U.S. 540, 555 (1994); accord, United States v. Lentz, 524 F.3d 501 (4th Cir.), cert. denied, __ U.S. __, 129 S.Ct. 303 (2008) (upholding a district court's denial of recusal where the court in an earlier proceeding had made factual findings adverse to movant which were necessary to decide an evidentiary question and did not exhibit favoritism or antagonism); United States v. Williamson, 213 Fed. Appx. 235 (4th Cir. 2007) (district court's denial of disqualification motion was not error where no showing of extra-judicial bias was made).

In this case, no reasonable factual basis for doubting the Court's impartiality is apparent. Etlin's case was randomly assigned to this Court, and the Court harbors no bias or prejudice against Etlin. The sole basis to which petitioner points in support of her disqualification request is her belief that the Court ruled incorrectly in her 1989 habeas corpus proceeding. Even putting aside the fact that the Court's dismissal as moot of Etlin's habeas corpus petition subsequently was affirmed by the Fourth Circuit Court of Appeals, entry of an adverse ruling in a prior case, standing alone, is insufficient to warrant recusal. Lentz, 524 F.3d at 501. Petitioner points to no extrajudicial source for the Court's alleged bias or prejudice, and indeed, none exists. Accordingly, as no reasonable factual basis for doubting the Court's impartiality has been shown, the Motion to Disqualify will

be denied.

### III. Provisional Motion to Withdraw Petition

In addition to moving to disqualify the Court, petitioner has submitted a Provisional Motion to Withdraw Petition. (Docket # 5). There, petitioner argues that in the event disqualification is denied, this Court should refrain from ruling on the merits of the instant petition and should dismiss the case "without further action." Petitioner states that she realizes that she thereby would forfeit the filing fee and she "accept[s] that result," and she argues that because there are no other parties to the suit, no other persons have any interest at stake in this proceeding, so no one's rights save her own would be affected if the action were dismissed.

It is well recognized that judge-shopping is disfavored. See Learning Network v. Discovery Communications, Inc., 11 Fed. App'x 297 (4th Cir. 2001); Genl. Elec. Co. v. Merhige, 1972 WL 2601 (4th Cir. Nov. 20, 1972) (denying application for mandamus to compel transfer of action from Eastern to Western District of Virginia where "it seem[ed] clear that the plaintiffs have engaged in judge-shopping."). In the specific context of motions to disqualify, tactics by litigants which are designed to engineer a situation requiring recusal are discouraged. See United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) ("Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate 'judge shopping.'"); In re Shoe Machinery Corp., 276 F.2d 77, 79 (1st Cir. 1960) ("We cannot permit a litigant to test the mind of a trial judge like a boy testing the temperature of water in the pool with his toe, and if found to his liking, decides to take a plunge.").

Here, in an analogous situation, petitioner's request that her petition be dismissed without adjudication only in the event that her motion for disqualification is denied appears to be a transparent attempt to judge-shop. It seems clear that petitioner's "provisional" request aims to

avoid the res judicata effect of a decision by this Court, which in turn would permit petitioner to re-file her action in hopes that it might be randomly assigned to a different court the next time, just as it initially was randomly assigned to this Court. Thus, petitioner's assertion that no interests save her own would be affected if her motion were granted misses the mark, as her request implicates the orderly administration of justice. Because petitioner's motion for recusal lacks merit for the reasons discussed above, her strategy to obtain the same relief by other means likewise must be rejected, and petitioner's Provisional Motion to Withdraw Petition will be denied.

### IV. Standard of Review

Although district courts have a duty to construe pleadings by pro se litigants liberally, a pro se plaintiff still must allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover,

a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950. Frivolous complaints are those that are based on "inarguable legal conclusion[s]" or "fanciful factual allegation[s]." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (examining identical language of predecessor statute to § 1915A).

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

## V. Analysis

Turning now to the substance of the petition itself, Etlin argues that errors occurred the resolution of case number 1:89cv0527-A, which now should be rectified pursuant to three alternatives. First, petitioner seeks the issuance of a writ of error coram nobis to correct "fundamental errors" in the dismissal of her § 2254 petition in case number 89cv0527-A; second, she argues that her instant claims can be deemed "supplemental to" those asserted in her 1989 habeas corpus petition, pursuant to 28 U.S.C. § 1367; and third, petitioner urges the Court to reconsider its earlier ruling pursuant to Fed. R. Civ. P. 60(b)(4). However, none of these provisions provides a jurisdictional vehicle for the relief petitioner seeks.[4]

---

[4] In the section of the petition subtitled "Choice of Remedy; Design of My Petition," Etlin states that she doesn't "know exactly how to ask for remedy," Pet. at 19, and she never articulates in a comprehensible manner the precise nature of the relief she hopes to receive. A fair reading of Etlin's petition makes it appear that in essence, she seeks to revisit the dismissal of the 1989 § 2254 application, which she believes in turn would allow her to revive her challenge to the lawfulness of the Fairfax County Circuit Court's contempt order of March 25, 1987. However, because no

### A. Writ of Error Coram Nobis

Under the All Writs Act, 28 U.S.C. § 1651 (a), federal courts have the power to grant a writ of error coram nobis to vacate a conviction after the petitioner has completed service of his sentence. United States v. Morgan, 346 U.S. 502 (1954); United States v. Mandel, 862 F.2d 1067, 1074-75 (4th Cir. 1988), cert. denied, 491 U.S. 906 (1989). Considered a "remedy of last resort," Fleming v. United States, 146 F.3d 88, 89 (2d Cir. 1998), a writ of error coram nobis is an "extraordinary" remedy to be granted only "under circumstances compelling such action to achieve justice." Morgan, 346 U.S. at 511; see Carlisle v. United States, 517 U.S. 416, 429 (1996) (stating that "it is difficult to conceive of a situation in federal criminal cases today where [a writ of error coram nobis] would be necessary or appropriate"). The writ may issue only where an error "of the most fundamental character" has occurred and no alternative remedy is available. Mandel, 862 F.2d at 1075.

In this case, Etlin initially avers that she seeks a writ of coram nobis directed not to the order entered by the Fairfax County Circuit Court, but instead to correct errors which allegedly occurred in her 1989 federal habeas corpus proceeding. Pet. at 5. Nonetheless, her argument devolves into a discussion of the errors she perceives in the Fairfax County judgment, which Etlin asserts was "a criminal judgment with civil penalties" and was void *ab initio*. Pet. at 7 - 14. However, regardless of whether Etlin's argument is interpreted as seeking coram nobis relief from the 1987 state court order or from the dismissal as moot of her 1989 federal habeas corpus application, no jurisdiction presently exists to grant her the relief she seeks.

To the extent that Etlin would have this Court issue a writ of coram nobis to relieve her of her obligations under the judgment of the Fairfax County Circuit Court, it is clear that coram nobis

---

jurisdiction to entertain Etlin's claim exists under any of the provisions she invokes - or, for that matter, pursuant to any other legal vehicle - it is unnecessary to belabor the precise contours of the remedy she requests.

10

is not available to attack a state conviction in federal court. Thomas v. Cunningham, 335 F.2d 67, 69 (4th Cir. 1964); see also In re Egan, 2009 WL 2235814 at *1 (4th Cir. July 27, 2009) ("A writ of error coram nobis may not be used to set aside a state conviction."); Bayat v. United States, 2008 WL 6915594 at *2 (E.D. Va. June 3, 2008) (noting that "a federal court simply lacks jurisdiction to vacate the judgment of a separate state court"); In re Shelton, 1 Fed. Appx. 149, 2001 WL 15324 (4th Cir. Jan. 8, 2001) ("[T]his court has no jurisdiction under § 1651 (a) to alter the judgment of a Virginia trial court."); accord, Lowery v. McCaughtry, 954 F.2d 422 (7th Cir. 1992), citing Sinclair v. Louisiana, 679 F.2d 513, 514 (5th Cir. 1982). "A writ of error coram nobis can only issue to aid the jurisdiction of the court in which the conviction was had." Sinclair, 679 F. 2d at 514. Therefore, as to the Virginia court's contempt judgment of March 25, 1987, coram nobis relief would be available to Etlin only in the courts of Virginia, and not in the federal forum. Thomas, 335 F.2d at 69.

To the extent that Etlin seeks coram nobis relief from this Court's dismissal of her § 2254 petition in case number 1:89cv0527-A, her argument fares no better. As noted above, coram nobis is not a substitute for direct appeal, and the writ will not lie where another adequate remedy is available. Morgan, 346 U.S. at 502; Mandel, 862 F.2d at 1075; Egan, 2009 WL 2235814 at *1. Here, the errors Etlin assigns to the 1989 habeas corpus proceeding, such as miscalculation of her sentence and misapprehension of the nature of the Virginia court's contempt order, could have been raised in her direct appeal from the dismissal of that § 2254 application. Therefore, a writ of error coram nobis is unavailable to address those claims. Egan, 2009 WL 2235814 at *1; see also, United States v. Wilson, 1996 WL 71098 at *1 (4th Cir. Feb 7, 1996), cert. denied, 517 U.S. 1246 (1996) (claims that could have been raised by direct appeal are outside scope of writ of error coram nobis).⁵

---

⁵Moreover, even if coram nobis relief otherwise were available to her, it is likely that Etlin's claim would be subject to dismissal as time-barred. When a coram nobis petitioner fails to provide

11

Etlin also argues that coram nobis is available in her case because there has been what she characterizes as an intervening change in the law. It is true that a writ of error coram nobis can be granted where there has been a retroactive dispositive change in the law. Mandel, 862 F.2d at 1075, citing United States v. Travers, 514 F.2d 1171 (2d Cir. 1974). Here, Etlin reasons that the dismissal of her 1989 federal habeas corpus petition as moot has been rendered questionable by the case of Townes v. Jarvis, 577 F.3d 543 (4th Cir. 2009). In that case, a Virginia inmate filed an application for a writ of habeas corpus pursuant to § 2254 after the Virginia Parole Board found him ineligible for discretionary parole. The district court dismissed the petition, and during the ensuing appeal, the inmate was released from prison. The state argued that the inmate's habeas claims were rendered moot by his release, but the appellate court disagreed, finding that: (1) petitioner still asserted an injury-in-fact, as his ongoing period of parole could be foreshortened by a discretionary parole hearing; (2) he continued to satisfy the causation requirement between the injury and the challenged conduct, because the finding of parole ineligibility precluded the possibility of a shorter parole term; and (3) petitioner's asserted injury remained redressable because a realistic possibility existed that he could obtain the ultimate relief he sought from the Parole Board were his habeas corpus application to be granted. Id. at 546 - 49, citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

---

a sound reason for seeking such relief in an untimely manner, the petition properly is dismissed. See Foont v. United States, 93 F.3d 76 (2d Cir. 1996) (barring coram nobis relief due to an almost five-year delay); Cruz v. People of New York, 2004 WL 1516786 at *4 (S.D.N.Y. July 6, 2004) (disallowing coram nobis petition after seven-year delay); Echenda v. United States, 2003 WL 21653370 at *6 (E.D.N.Y. July 14, 2003) (barring coram nobis relief due to unjustified seven-year delay); Mastrogiacomo v. United States, 2001 WL 799741 at *2 (S.D.N.Y. July 16, 2001) (barring coram nobis after unjustified three-year delay). Here, it is likely pursuant to these authorities that Etlin's delay of over sixteen years would result in the dismissal of her coram nobis application, even if she otherwise could state a claim for such relief. See Tocci v. United States, 178 F. Supp. 2d 176, 181 (N.D.N.Y. 2001) ("The sufficiency of the reasons [for delay] bears an inverse relationship to the length of the delay - the longer the delay, the more compelling must be the reasons.")

The holding in Townes does not support Etlin's position for two reasons. First, the determination in Townes that the petitioner's claim was not moot did not represent a change in the law that existed in 1989, when Etlin's § 2254 application was dismissed. Indeed, the court in Townes expressly applied the definition of mootness articulated in Arizonans for Official English v. Arizona, 520 U.S. 43 (1997), which in turn had derived its formulation from U.S. Parole Comm. v. Geraghty, 445 U.S. 388 (1980). Townes, 577 F.3d at 546. Second, and perhaps more important, the holding in Townes even if it were a departure would not be dispositive of the outcome of Etlin's 1989 habeas corpus application. In Townes, the petitioner remained under parole supervision while seeking habeas corpus relief from the denial of discretionary parole, a fact which clearly underlay the Fourth Circuit's determination that collateral consequences with respect to the duration of his probationary period continued to flow from the action of the Parole Board he challenged. In Etlin's situation, in contrast, her period of probation expired in March, 1990, while her federal petition was pending, and her liberty was completely restored. Etlin v. Huggins, Mem. Op. Oct. 1, 1990 at 6. Thus, at that juncture Etlin no longer could satisfy at least one of the three Lujan elements for Article III standing, because the "injury" relevant in a habeas corpus proceeding - that is, unlawful custody - ceased to be redressable. Therefore, Etlin's argument that the holding in Townes creates a jurisdictional portal for a coram nobis challenge to the dismissal as moot of her 1989 habeas corpus petition is without merit, and coram nobis in unavailable as a remedy in this proceeding.

### B. Supplemental jurisdiction doctrine of 28 U.S.C. § 1367

Etlin next contends that the district court may grant the relief she seeks exists pursuant to the supplemental jurisdiction doctrine of 28 U.S.C. § 1367, Pet. at 17 - 18, but her argument is misplaced. The doctrine of supplemental jurisdiction holds that federal courts generally have discretion to retain or to dismiss pendant state law claims when the federal basis for an action drops

away. Shaunigan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995). Federal supplemental jurisdiction was created by the Judicial Improvement Act of 1990, which codified the doctrine of pendant jurisdiction developed by the Supreme Court in United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), and also incorporates the doctrine of ancillary jurisdiction. Id. This doctrine simply has no relevance to the situation at bar, where petitioner seeks to revive or revisit a federal habeas corpus action that was dismissed as moot over sixteen years ago.

If what petitioner intends to argue is that this Court now would be able to exercise pendant jurisdiction over the 1987 Virginia contempt judgment, her position also is incorrect. Putting aside any other considerations, pendant jurisdiction exists only where the federal claim has "substance sufficient to confer subject matter jurisdiction on the court." Id. at 725; accord, ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 628 (4th Cir. 1997). Thus, in the absence of a federal issue which initially gives rise to subject matter jurisdiction over a controversy, pendant jurisdiction over factually-related state claims does not exist. Cf. Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 662 (4th Cir. 1998); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.") For the reasons discussed throughout this Memorandum Opinion, there presently exists no subject matter jurisdiction over any federal claim Etlin wishes to raise with respect to her state contempt judgment. Therefore, no pendant jurisdiction can exist regarding any state law issues related to that judgment, and the doctrine of supplemental jurisdiction as a whole has no bearing on petitioner's present claims.

C. Rule 60 (b)

Lastly, Etlin argues that she should be allowed to re-file her 1989 habeas corpus application as an "independent action for relief" pursuant to Fed. R. Civ. P. 60(b)(4). Relief under Rule 60(b)

is available for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud .... misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Petitioner invokes subsection (4) of the foregoing rule, contending that the Virginia contempt judgment of 1987 was void *ab initio*. Pet. at 18. However, for the reasons that follow, Rule 60 (b) confers no jurisdiction for the "independent action" Etlin proposes.

Rule 60(b) allows a party in a federal action to seek relief from a final judgment and to request reopening of his case under a limited set of circumstances, including fraud, mistake, and newly-discovered evidence. However, contrary to Etlin's supposition, it is well settled that "Rule 60(b) may only be used to challenge a federal judgment. It may not be used to challenge a federal or state criminal conviction." Greer v. County of Patrick, 2006 WL 1401607 (W. D. Va.), aff'd, 217 Fed. Appx. 233 (4th Cir.), cert. denied, 128 S.Ct. 398 (2007), citing United States v. O'Keefe, 169 F.3d 281, 289 (5th Cir. 1999) (holding that Rule 60(b) does not provide for relief from a criminal judgment); accord, Bagley v. Warden, Kershaw Corr. Inst., 2007 WL 1459699 at *3 (D.S.C. May 15, 2007) ("Rule 60 (b) does not authorize a federal district court to provide a state prisoner with relief from a state criminal commitment order.") (emphasis original). Therefore, Rule 60 (b) does not provide jurisdiction for this court to review the propriety of the Virginia contempt judgment, or to relieve Etlin from her obligations under it.

Insofar as Etlin also appears to argue that Rule 60 (b) provides a basis to allow her to "amend" her 1989 § 2254 petition and to go forward with the claims expressed therein, Pet. at 18, her position again is without merit. Like the rest of the Federal Rules of Civil Procedure, Rule 60(b) applies in habeas corpus proceedings only "to the extent that [it is] not inconsistent with" applicable

15

federal statutory provisions and rules. See 28 U.S.C. § 2254, Rule 11. Title 28 U.S.C. § 2254 provides the exclusive statutory basis for a litigant's right to apply to federal court for relief from a violation of his constitutional rights in the course of his state court proceedings. Preiser v. Rodriguez, 411 U.S. 475 (1973); Bruce v. Commonwealth of Virginia, 850 F.2d 688, 1988 WL 67852 (E. D. Va. 1988). Here, then, regardless of whatever denomination Etlin now would attempt to subscribe to it,⁴ any "independent action" to challenge the constitutionality of her 1987 Virginia contempt judgment rightfully would be construed as a habeas corpus petition pursuant to § 2254. For instance, in Gonzalez v. Crosby, 545 U.S. 524 (2005), the Supreme Court considered the extent to which Rule 60(b) applied to § 2254 habeas proceedings in the context of a petition that had been dismissed by the district court as time-barred. As a threshold matter in that case, the Court determined that where a Rule 60(b) motion contains one or more claims for relief, it is in substance a habeas petition "and should be treated accordingly." Id. at 531. The Court noted that "[a] habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with'" § 2254. Id.; see also, Edgell v. Haines, 60 Fed. Appx. 509, (4th Cir. 2003) (holding that district court properly construed state prisoner's § 2241 petition as a successive § 2254 application); In re Vial, 115 F.3d 1192, 1994 (4th Cir. 1997); Bagley, 2007 WL 1459699 at *2 (construing and dismissing a petition for §2241 relief as a successive § 2254 petition, despite petitioner's argument that he had "no alternative remedy available to achieve justice in [his] cause"). Pursuant to these authorities, any "independent action" Etlin might now pursue to challenge the lawfulness of the state contempt judgment could be construed appropriately and exclusively as seeking relief under § 2254.

---

⁴When considering the issue of its own jurisdiction, a district court may disregard a litigant's characterization of his claims to avoid "unjust manipulation or avoidance of its jurisdiction."Bagley, 2007 WL 1459699 at *2, quoting Lyon v. Centimark Corp., 805 F. Supp. 333, 334-35 (E.D.N.C. 1992); see also, Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908).

However, a number of jurisdictional and procedural constraints apply to a state prisoner's ability to pursue an action pursuant to § 2254. Among those requirements is the fact that, as was thoroughly discussed in the two Memorandum Opinions issued in Etlin's 1989 federal proceeding, a person is entitled to a writ of habeas corpus only if he or she is "in custody" at the time the petition is filed. 28 U.S.C. § 2254. In addition, the application for habeas relief may become moot, as Etlin's did, if the petitioner ceases to be in custody during the pendency of the federal proceeding. Carafas, 391 U.S. at 234. Here, Etlin is not now in custody, so an "independent action," construed as a § 2254 petition, would be subject to dismissal on that basis.

Furthermore, a petition for a writ of habeas corpus must be filed in most instances no later than one year after the state judgment of conviction becomes final. 28 U.S.C. § 2244(d)(1)(A)-(D). Because the state court judgment Etlin wishes to challenge in an "independent proceeding" was entered in 1987, over twenty years ago, it is virtually certain that any such proceeding also would be subject to dismissal as time-barred, unless Etlin could show that the very limited doctrine of equitable tolling were applicable in her case. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003); Harris v. Hutchinson, 209 F.3d 325, 328-29 (4th Cir. 2000). In turn, it is highly unlikely that equitable tolling would be deemed warranted, since a petitioner's own lack of diligence in pursuing her federal remedy acts to negate its application, Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001), and Etlin has offered no compelling reason to justify her decades-long delay in mounting the instant challenge to the Virginia contempt judgment.[7]

---

[7] It is apparent that Etlin is aware that the timing of her instant application for relief poses a problem, as a letter from her psychiatrist has been filed with the court at her request. (Docket # 4) In that letter, the psychiatrist states that he has been treating Etlin since January, 2008, and he opines that "equitable tolling" should be available to Etlin based upon that fact that she has been "disabled by emotional disorders since September, 1991." Id. at 2. It has become well established that § 2244(d) may be subject to equitable doctrines such as tolling only under very limited circumstances. For equitable tolling to apply, a petitioner must establish that: (1) extraordinary circumstances, (2) beyond his control and external to his own conduct, (3) prevented him from filing on time. Rouse,

17

Nor could the time bar be avoided if the instant petition were deemed an amendment to Etlin's 1989 habeas corpus application, rather than a free-standing action in its own right. Etlin's earlier petition was filed prior to the 1996 revision of § 2254 that added the one-year limitations provision, and thus it unquestionably was filed timely. However, amendments filed outside the limitations period do not relate back to a timely petition if they assert new claims or facts. See Mayle v. Felix, 545 U.S. 644, 650 (2005)(holding that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those in the original pleading set forth."); Davenport v. United States, 217 F.3d 1341 (11 Cir. 2000), cert. denied, 532 U.S. 907 (2001) (holding that untimely amendment including only entirely new claims could not relate back to original timely petition). Here, it is readily apparent that Etlin's current arguments for relief from the 1987 Virginia contempt judgment assert claims and facts that vary from those put forth in her 1989 § 2254 proceeding. Thus, even if the instant petition were interpreted as an amendment to Etlin's timely-filed 1989 habeas corpus application, rather than as an "independent action," it still would be subject to dismissal as time-barred. For these reasons, there presently exists no jurisdiction for this court to entertain an "independent action" aimed at challenging the state contempt judgment, whether or not such an action is characterized as being brought pursuant to Rule 60 (b).

## VI. Conclusion

For the foregoing reasons, petitioner's Petition for Writ of Error Coram Nobis must be

---

339 F.3d at 247; Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). The Fourth Circuit has cautioned that equitable tolling of the limitations period is rarely warranted and is to be reserved "for those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d at 330. Furthermore, as noted, a petitioner's own lack of diligence in pursuing a federal remedy generally negates application of equitable tolling. Spencer, 239 F.3d at 630. Here, then, even if jurisdiction existed to construe the instant application as seeking § 2254 relief, Etlin would face an uphill battle in persuading a court to apply equitable tolling in her case.

dismissed for failure to state a claim. Petitioner's Motion to Disqualify and Provisional Motion to Withdraw Petition will also be denied. An appropriate Order shall issue.

Entered this 9th day of November 2009.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia

19